THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES LAWSON, Defendant-Appellant.

(No. 12366; )

Fourth District—November 14, 1974.

John F. McNichols, J. Daniel Stewart, and Daniel D. Yuhas, all of State Appellate Defender's Office, of Springfield, for appellant.

Arthur A. Jones, State's Attorney, of Paris, for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On November 23, 1963, defendant James Lawson, entered a plea of guilty to an indictment charging him with five counts of murder and was sentenced to a term of imprisonment of 60 to 100 years. No direct appeal was taken from this conviction. On May 7, 1973, a petition for post-conviction relief was filed in the Edgar county circuit court. On May 29, 1973, a hearing on the petition was held, and on June 14, 1973, the trial judge denied defendant's petition for post-conviction relief. Defendant appeals from that denial. Two issues are presented to this court: (1) Whether the trial court erred in finding that defendant's confession was not coerced and voluntary; and (2) Whether defendant's plea of guilty entered after a coerced confession is inherently involuntary.

At the post-conviction hearing defendant testified that he was arrested in the late afternoon of September 1, 1963, and that he was questioned until 4 o'clock on the morning of September 2, 1963. Defendant stated that nothing was stated to him concerning his rights, that he was not told he could have a lawyer present, that he couldn't make a phone call, that he couldn't write letters, and that he couldn't have any visitors. Defendant further stated that during this period of time he was not fed and was not allowed to sleep. Ralph Pearman testified that at the time of the offense in question he was State's Attorney, that on September 1, 1963, he saw defendant at 7:30 in the evening at the county jail, and that he talked with defendant for less than an hour. He stated that later in the evening he also talked to defendant, and at that time de-

fendant's oral confession was transcribed. The transcript of the statement was then showed to Pearman who noted that the questions therein were a correct reflection of the questions asked defendant. He further stated that " * * * I talked to him I asked him if he wanted to eat something or if he wanted cigarettes or coffee or things of that nature." He also stated that defendant was given the opportunity to make phone calls. On cross-examination he stated that the statement was taken from defendant at approximately 1:30 in the morning, and that when he was with defendant no threats were made. He also stated that defendant was advised that he did not have to make a statement and that if he did, it could be used against him. He further stated that defendant was asked if he had an attorney or if he wanted one. Carl Lund, defendant's attorney at trial, testified that a motion to suppress the confession was not made at the trial (although the statement was objected to when introduced) and "[a]t that time our main interest on the confessions were, were they forced, done under coercion or on a threat and as I remember now, I remember specifically at this time that the objection was made because the statement was taken so late at night and as to the threats, they didn't exist. This fellow [defendant] sat down there in the basement of the jail, this investigator and they had a nice little time visiting, during which they brought out all the damning testimony, what did you do and he was sympathetic with him. I objected to it, the admissibility on the theory that it happened so late at night that there had to be some coercion and that's pretty thing [sic]."

Defendant's statement taken at 1:45 on the evening of September 2, 1963, indicates that defendant stated that he had only been questioned for several hours, that he at all times had been allowed to smoke, eat or drink coffee, that he had not been mistreated or threatened, that he had the opportunity to make phone calls, that he made the statement freely and voluntarily, and that he understood that the statement could be used against him in court.

Defendant contends that the trial court erred in not finding that defendant's confession was involuntary. We do not agree. We find nothing in the record to indicate that defendant's confession was involuntary or coerced. The only testimony in this regard was that of defendant at his post-conviction hearing. This testimony, however, was contradicted in every respect by the trial record, the State's witnesses at the post-conviction hearing, including defendant's trial counsel, and defendant's statement itself.

Accordingly, for these reasons the trial judge properly denied defendant's post-conviction petition, and we therefore affirm.

Affirmed.

SMITH, P. J., and TRAPP, J., concur.